**\* NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

The Honorable Freda L. Wolfson, U.S.D.J.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal Action No. 06-275 |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| vs. | : | |
| | : | |
| | : | |
| TERRANCE D. STRADFORD, | : | |
| Defendant. | : | |

**WOLFSON, United States District Judge**

Presently before the Court is the Motion of Defendant, Terrance D. Stradford ("Stradford"), for a New Trial pursuant to Fed R. Crim. P. 33.  Defendant's proposed grounds for a new trial include: (1) ineffective assistance of counsel; (2) pre-indictment delay; (3) compelled self incrimination through the subpoena of documents; (4) illegal search and seizure and the use of suppressed evidence and its fruits at trial; (5) the use of privileged documents; (5) the use of coerced statements from a jailhouse informant; and (5) a Brady violation alleging that the criminal history of a government witness was

not fully provided.  The Court has evaluated all these grounds and finds that each one is unpersuasive in its own right.  Specifically, the Court finds that: Stradford's counsel was effective throughout his representation, the pre-indictment delay does not rise to the level of a Due Process violation, the subpoena of documents from the bankruptcy trustee was not a Fifth Amendment violation of Stradford's right against compelled self incrimination, no privileged documents were used at trial against Stradford, no statements from the jailhouse informant were used against Stradford, and that the Government did disclose its witnesses' criminal history to Stradford in compliance with the Brady Rule.  Accordingly, Stradford's Motion for a New Trial is denied.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On December 28, 2005, a criminal complaint was filed against Stradford.  On January 11, 2006, he was arrested in North Carolina and on January 17, 2006 a detention hearing was held in the Western District of North Carolina where Stradford was ordered detained by the Honorable David Keesler, U.S.M.J.  Stradford was transported to the State of New Jersey and made his first appearance February 8, 2006, in the District of New Jersey before the Honorable Joel B. Rosen, U.S.M.J.   On February 14, 2006, Magistrate Judge Rosen entered a Continuance Order excluding the time between February 17, 2006 through April 3, 2006.  The Order noted that "both the United States and the defendant desire additional time to negotiate a plea agreement" and "the ends of justice" as the reasons for the continuance Order.  (Order to Continue, Doc. No. 7, February 14, 2006).

Stradford was indicted by a Grand Jury on April 5, 2006.  Then, on May 26, 2006, the Government filed a Motion for a status conference.   Following that, on June

5, 2006, a Continuance Order was entered by this Court excluding the time from June 2, 2006 through August 1, 2006.  The Order noted that "Defendant, through his counsel, has requested additional time so that counsel will have reasonable additional time to review discovery, discuss plea negotiations, and file motions."  The Order was signed by both the U.S. Attorney's Office and Defendant's Counsel.   (Order to Continue, Doc. No. 28, June 5, 2006).  June 8, 2006, Defendant filed a second motion to modify his bail conditions.  A hearing on the Motion to Modify Stradford's bail conditions was scheduled before Judge Rosen, however, on June 21, 2006, Judge Rosen adjourned it until August 4, 2006.

On July 31, 2006, this Court entered a Continuance Order excluding the time between August 1, 2006 through October 2, 2006.  The Order noted that "defendant and his counsel request[ed] a continuance pursuant to Title 18, United States Code, Section 3161(h)(8)(A) so that the defendant and his counsel will have additional time to review discovery, conduct research, complete investigation of these charges." Moreover, the Order noted that the granting of the continuance will "provide the defendant with additional time to effectively prepare for trial in this matter." The Order was signed by the U.S. Attorney's Office and Defendant's counsel.  (Order to Continue, Doc. No. 35, July 31, 2006).

On August 23, 2006, The Grand Jury returned a Superseding Indictment adding a defendant and two new counts against Stradford.  On September 28, 2006, a Continuance Order was entered by this Court, excluding the time between September 28, 2006 until February 20, 2007.  The Continuance Order noted that "Each of the above captioned defendants, through their respective counsel, have requested additional

time so that counsel will have reasonable additional time to review discovery, conduct research, complete an investigation of these charges, and determine what, if any pretrial motions to file." The Order was signed by Mr. Stradford himself, Stradford's counsel, Thomas Ashley, Esq., and the Government.  (Order to Continue, Doc. No. 58, September 28, 2006).

On January 16, 2007, this Court held an in person status conference at which time all counsel and parties, including Mr. Stradford, agreed on the record to a continuance of the trial until September 10, 2007 and an exclusion of time under the Speedy Trial Act for this continuance.  Indeed, the status conference was held after Defendant's counsel informed the Court that he had numerous scheduling issues and would not be ready for trial in this matter until September 2007.  In light of the substantial delay, this Court wanted to ensure, on the record, that Mr. Stradford was aware of these delays and that he wanted to proceed with Mr. Ashley as his trial counsel despite the lengthy delays.  Indeed, at the hearing, the Court engaged in the following colloquy with the Defendant:

> THE COURT: You have agreed to continue this case, the trial of this matter, until September 10, 2007?
>
> DEFENDANT: Yes. As far as I understand it will not prohibit me from putting in a motion during this time.
>
> MR. ASHLEY: In other words, your Honor, what he is saying that. . . there was a question raised with respect to whether there had been an excessive delay with respect to the period from the time of his arrest and the time that he appeared in the district, and we are working on that. . .
>
> . . . .

MR. SCHWEIKER: That's my understanding as well, your Honor. He only agrees to the exclusion of time from today until September 10th.

(Status Conference, January 16, 2007).

Following the status conference on January 16, 2007, and as a result of the Defendant's consent, the Court entered a Continuance Order excluding time from February 20, 2007 through September 10, 2007. Thereafter on April 19, 2007, Defendant Stradford filed a Motion to Dismiss his Indictment based on alleged violations of the Speedy Trial Act that occurred before and after the indictment. On June 11, 2007, due to the conflict of interest presented by Stradford's Motion to Dismiss the Indictment, Stradford's counsel at the time, Mr. Ashley, was replaced by a new court appointed counsel, Jerome A. Ballarotto, Esq. It was determined that Mr. Ballarotto had a conflict of interest in representing Stradford, and so, on June 21, 2007, the Court appointed Ralph A. Jacobs, Esq. Then, on July 5, 2007, although Mr. Jacobs was not relieved as counsel, yet another counsel, John J. Flynn, Esq., made a notice of appearance on behalf of Stradford. Mr. Flynn was relieved as counsel on August 13, 2007 and Mr. Jacobs remained as Stradford's counsel through the close of trial. Stradford's Motion to Dismiss the Indictment under the Speedy Trial Act was ultimately denied, after considering the testimony of Stradford and Ashley, at a hearing held on July 9, 2007.

On August 6, 2007, Stradford made a Motion to Suppress Evidence obtained by the Bankruptcy Trustee's Search and Seizure of Defendant's Personal Property in North Carolina. Following an evidentiary hearing on August 30, 2007, briefing, and having oral argument before trial, on September 10, 2007, this Court granted Stradford's

-5-

Motion to Suppress.  Stradford's trial began on September 11, 2007, and  following a three week jury trial, the Defendant was convicted of all twenty four counts brought against him in his Superseding Indictment.  The Superceding Indictment charged the Defendant with conspiracy to commit wire fraud, wire fraud, conspiracy to commit money laundering, money laundering, and tax evasion.

Subsequent to trial, on October 5, 2007, Mr. Jacobs made a Motion for an Extension of Time to file a Motion for a New Trial.  The Court granted Stradford's Motion for an Extension of Time on October 29, 2007, ordering the Motion for New Trial be filed within 30 days.  Subsequently, Stradford made a motion to proceed pro se; the Court granted his request on October 30, 2007, and appointed Bruce L. Throckmorton, Esq., as standby counsel.  Then this Court granted an extension of time on December 6, 2007, directing that Stradford file all motions related to these criminal proceedings by December 30, 2007.  Subsequently, a status call was held by this Court on January 8, 2008, where the Defendant was yet again granted an extension to file his Motion for a New Trial, until January 18, 2008.  Finally, Stradford filed the present Motion before the Court on February 1, 2008.  Stradford requested oral argument, however, in a letter order dated February 25, 2008, the Court denied his request and notified all parties that the Court would decide the present Motion on the papers.

## II.    Standard of Review

Federal Rule of Criminal Procedure 33(a) provides, in relevant part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  This rule generally gives the district courts broad discretion in determining whether a new trial is appropriate. U.S.

v. Jasin, 280 F.3d 355, 360 (3d Cir. 2002).  However, the Third Circuit has implied in its jurisprudence that a Rule 33 Motion is not a forum for litigating issues that could have been raised prior to or during trial.  See e.g., U.S. v. Pelullo, 105 F.3d 117, 126-27 (3d Cir. 1997) (affirming the trial court's denial of a motion for a new trial where enough evidence was present to infer that defendant or his attorney had knowledge of the alleged juror misconduct prior to the end of trial).

## III.   DISCUSSION

### A.   PRE-INDICTMENT DELAY UNDER THE FIFTH AMENDMENT

Defendant Stradford claims that his Fifth Amendment right to Due Process of law, was violated by pre-indictment delay.[1]  The Due Process clause provides a basis for dismissing an indictment if the defense can show that prosecutorial delay in bringing an accusation has prejudiced the defendant's right to a fair trial.  U.S. v. Marion, 404 U.S. 307, 325 (1971);  see U.S.C.A. Const. Amend. 5.  In Marion, the Supreme Court recognized that "[t]he law has provided other mechanisms to guard against possible [prejudice] as distinguished from actual prejudice resulting from the passage of time between crime and arrest or charge." 404 U.S. 307, 322.  In those instances, the applicable statute of limitations is the defendant's "primary guarantee against the bringing of overly stale criminal charges . . . .  These statutes provide predictability by

---

[1]At the onset, the Court must define the boundaries of the time period in question.  Here, a criminal complaint was filed against Stradford on December 28, 2005, he was arrested on January 11, 2006, and indicted on April 5, 2006.  The applicable period of time when a Due Process violation could have occurred is after the alleged criminal activity but before the indictment was returned on April 5, 2006.  It is this time period that the Court will focus on when determining whether a Due Process violation occurred.

specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." Id. "The speedy trial guarantee of the Sixth Amendment does not apply to pre-indictment delay . . . .  However, the Due Process Clause of the Fifth Amendment protects defendants against oppressive pre-indictment delay within the applicable limitations period." U.S. v. Sebetich, 776 F.2d 412, 429 (3d Cir. 1985) (citing United States v. Lovasco, 431 U.S. 783, 788 (1977); United States v. Marion, 404 U.S. 307, 320, 324 (1971)).

To dismiss an indictment on the basis that pre-indictment delay violated the defendant's Due Process rights, the Third Circuit requires that the following two factor test be met:

> To invoke the extreme sanction of dismissal of the indictments under the Due Process Clause, the defendants must prove "that the government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense."

Sebetich, 776 F.2d at 430 (quoting U.S. v. Gouveia, 467 U.S. 180, 192 (1984)). The defendant bears the burden of showing both that the Government acted with intentional delay and actual prejudice.  U.S. v. Ismaili, 828 F.2d 153, 167-68 (3d Cir. 1998); see Marion, 404 U.S. at 325; Lovasco, 431 U.S. at 789-90.

In this case, eighteen months passed from the completion of the alleged crime to Defendant's arrest and twenty-one months passed between the date of the alleged crime and the date the indictment was returned.  In his moving papers, Defendant Stradford cites to a series of cases to support the legal principal that an indictment can be dismissed for pre-indictment delay.  (See Def.'s Br. at p. 1) (citing U.S. v. Wilson, 240 U.S. 332 (1975); U.S. v. Schlei, 122 F.3d 944 (11th Cir. 1997); U.S. v. Beckett, 208 F.3d

140 (3d Cir 2000)).  However, Defendant Stradford fails to set forth in his briefing how these cases are applicable to his own allegations of pre-indictment delay.  Since it is unclear to the Court how these cases apply to the current case, apart from the general premise that the Court has the power to grant a new trial due to pre-indictment delay under the Due Process Clause of the Fifth Amendment, it will continue on to address Stradford's specific arguments relevant to the two pronged test required to make a showing of a Due Process violation under the Fifth Amendment.

### i.   Intentional Delay

The first prong to establish a Due Process violation under the Fifth Amendment of the Constitution requires that the defendant show that the Government acted intentionally to delay the defendant's indictment.  Sebetich, 776 F.2d at 430.  Defendant Stradford argues that the Government purposely delayed indicting him and used this delay against him in bad faith.  Stradford sets forth the alleged bad faith delay by outlining certain facts surrounding the continuances on February 14, 2006 and July 31, 2006,[2] and the alleged breach of fiduciary duties by the bankruptcy trustee, Larry Stiles, in the administration of the estate of 2791 Lake Front Drive LLC by conducting an unconstitutional search and seizure of Defendant's belongings.  (Def.'s Br. p. 3-5; see Tr. Vol. 10, September 10, 2007 at p. 24).

---

[2]Stradford references the July 31, 2006 Continuance Order in his briefing to further his claim that his Fifth Amendment Due Process rights were violated due to pre-indictment delay.  However, Stradford was indicted on April 5, 2006, before the July 21, 2006 continuance order was even entered.  The Court fails to see how a post indictment continuance order can be shown to evidence pre-indictment delay.  Accordingly, the Court will not consider this continuance order in its analysis of a Due Process violation because of pre-indictment delay.

In the February 15, 2006 continuance order, Stradford's attorney, Thomas Ashley, Esq., signed an order stating that "plea negotiations are currently in progress" and that the defendant consented to the continuance. Stradford argues that the premise behind the continuance order was erroneous, that plea negotiations never took place, that he never consented to the order, and that the erroneous basis of the continuance order was brought to light by the evidentiary hearing held on July 9, 2007. (See Tr. Pre-Trial Hearing, July 9, 2007). Defendant Stradford stresses that he is not arguing under the Speedy Trial Act, but is merely alluding to the continuance orders as examples of relevant conduct to show how the Government intentionally delayed his indictment, and as a consequence violated his Due Process rights by intentional pre-indictment delay.[3]

The Government argues that the Court should reject Stradford's allegations of intentional delay based on notions of common sense, noting that this case involved multiple victims, multiple subjects, fictitious entities and the analysis of a substantial number of financial, real estate, and telephone records. In addition, the Government argues, that it is of no consequence whether defense counsel consented to the

---

[3]The Government argues in its Opposition Brief that Defendant Stradford's Speedy Trial Act rights were not violated, however, the Court does not construe Stradford's brief as arguing a violation under the Speedy Trial Act. In his brief, Stradford specifically states that he: "is not arguing speedy trial right or the act . . . merely expressing examples or relevant conduct, in showing the actions by the government were not accidental or isolated mistakes, but purposeful patterns of behavior, within the Due Process pre-indictment period." (Def.'s Br. at p. 15).

Nonetheless, even if Stradford were arguing that his Speedy Trial Act rights were violated due to pre-indictment continuance orders, the Court would deny it because Defendant already made such a Motion and the Court denied relief in a hearing dated July 9, 2007. Accordingly, the Court will not address Defendant Stradford's rights under the Speedy Trial Act.

continuance order as opposed to the defendant himself and that the continuance order was not indicative of intentional delay.   The Government's first argument is supported by this Court's recent ruling in U.S. v. Tulu, 535 F. Supp. 2d 492 (D.N.J. 2008), where it was held that a "defendant's consent, or lack thereof, to a continuance requested by defense counsel is not controlling for Speedy Trial Act purposes." 535 F. Supp. 2d at 500.

Furthermore, the record supports the Government's contention that the continuance orders were not designed to impose bad faith delay to the Defendant's Indictment.  Defendant's counsel testified that, at the time, he felt a continuance was in the Defendant's best interest, and that he wanted a chance to speak to the Government with respect to the nature of its case.  (Tr. July 9, 2007 at 72).  Although, plea negotiations were not taking place at the time the continuance order was issued, it follows that both parties expected plea negotiations to begin in short order.  The record demonstrates that Defendant Stradford's allegations of intentional delay are completely unsubstantiated as the continuance order accurately reflected both parties' desire for additional time to discuss the case and explore the possibility of a plea disposition.  This is evidenced by a letter sent on February 9, 2006, from Joshua Drew of the United States Attorneys' Office to Mr. Ashley letting him know that it was the intention of the U.S. Attorneys' Office to present the matter to a grand jury the next week, unless the defense wanted to consent to a continuance for continuing plea negotiations and cooperation discussions.  This letter indicates that the Government was ready and that it was really the defense that wanted the continuance which further delayed the

indictment.  Accordingly, the Court finds that Defendant Stradford has failed to show that the Government acted with intentional delay.

### ii.       Prejudice due to the alleged Pre-Indictment Delay

Even if the Court were to hold that the Defendant has met his burden to show that the Government intentionally delayed his indictment, Defendant Stradford has still failed to prove the second prong required to show a Due Process violation:  that the Government's intentional delay caused "actual prejudice" to the Defendant in presenting his case.  Sebetich, 776 F.2d at 430.  Although, Defendant Stradford argues that he has been prejudiced by the Government's alleged intentional delay, these arguments simply hold no water.[4]

The only prejudice that the Court can discern from the delay caused by the continuance orders is that Defendant Stradford might have trouble recalling certain events and the details of various conversations regarding the allegedly criminal transactions of which he was accused.  Stradford argues that his case was prejudiced because the alleged "oppressive delay" somehow prevented him from finding witnesses to testify consistent with his supposed innocence.  (Def.'s Br. at p. 20).  To support his argument, Defendant Stradford relies on the case of U.S. v. Jones, 322 F. Supp. 1110 (E.D. Pa. 1971).  In Jones the Court held that the defendant was prejudiced as a consequence of pre-indictment delay because he could not recall the events of the date

---

[4]Defendant Stradford cites to a series of cases that are relevant to an analysis of prejudicial delay under the Sixth Amendment Speedy Trial Act, however Stradford makes clear in his brief that he is arguing under the Fifth Amendment Due Process Clause.  (See Def.'s Br. 17-19).  Accordingly, many of these cases are not applicable to the present Motion.

that the alleged narcotics sale took place due to the fact that four months elapsed between that date and the date the defendant was notified of the charges against him. Id. at 1113 - 1115.

Jones is inapposite to this case because it was based upon a narcotics sale, that took place on one specific date, and hinged entirely on the credibility of an undercover police officer versus the defendant, and thus, required recollection of the minute details of that transaction.  Here, Stradford was involved in a complicated crime which took place over the course of many months, spanning many different activities, and involving many different lenders.  Stradford merely contends, without making reference to specific times and places, that if there wasn't a delay in his indictment, he may have been able to solicit additional testimony in his defense.   Unlike the case in Jones, where the defense's whole case hinged on one person's testimony, here Stradford's conviction was based on the testimony of countless individuals including close personal contacts who were co-participants in his criminal actions as well as those that were harmed as a consequence of his criminal actions.[5]

The notion that a delay before his indictment prevented him from finding additional witnesses is nonsensical at best.  Defendant Stradford states that his recollection of where he was, what he was doing, and why he was doing it has faded with time, and as a consequence, has prejudiced him because he could no longer discover evidence that might have helped him in his defense.  However, as the Government notes

_____

[5]These trial witnesses included, among others, Title Company Employees, Bank Representatives, Attorneys, and his paramour, Christina Hachadoorian, a co-participant in Stradford's criminal enterprise.

in its brief, its witnesses were in the same proverbial boat as Stradford and subject to the same delay in time, except they had no trouble recalling the events that formed the basis of Stradford's criminal activity.

Moreover, such general allegations of prejudice are insufficient to support a Due Process claim.  In <u>Marion</u>, the Supreme Court held that generalized allegations of prejudice are not sufficient to substantiate a claim that Due Process rights have been violated.  More specifically, the <u>Marion</u> Court held that a three-year preindictment delay was not violative of Due Process:

> Appellees rely solely on the real possibility of prejudice inherent in any extended delay:  that memories will dim, witnesses become inaccessible, and evidence be lost.  In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment.  Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature.

<u>Marion</u>, 404 U.S. at 325-26.  "Courts have interpreted <u>Marion</u> to erect a stringent standard for showings of actual prejudice."  <u>U.S. v. Baxt</u>, 74 F. Supp. 2d 425, 433 (D.N.J. 1999); <u>see</u> e.g., <u>U.S. v. United States Gypsum Co.</u>, 550 F.2d 115, 119 (3d Cir. 1977) (court held that there was no actual prejudice when thirty-six of their potential witnesses died during an eight-year pre-indictment delay); <u>U.S. v. Cannistraro</u>, 800 F. Supp. 30, 57 (D.N.J. 1992) (the court concluded that there was no actual prejudice even though a number of the defendants' potential witnesses had died during a substantial pre-accusation delay, because the defendants did not establish that the witnesses' testimony would have been exculpatory).  "Indeed, a review of this Circuit's case law reveals that for a defendant to show prejudice as a result of pre-indictment delay, the

-14-

defendant must demonstrate, with specificity, that the delay resulted in the loss of exculpatory evidence, whether testimonial or documentary, that is not merely cumulative of evidence available from other sources." Baxt, 74 F. Supp. 2d at 434; see Ismaili, 828 F.2d at 168-69; Sebetich, 776 F.2d at 430; U.S. v. Kruckel, 1994 WL 774645, at *22 (D.N.J. 1994) .

Here, Defendant Stradford has failed to show actual prejudice to his case.  In his briefing, Defendant Stradford makes countless incoherent, convoluted, and mind numbing arguments; most of which are completely irrelevant to the Third Circuit's approach in determining whether actual prejudice exists.   Some of these arguments include:  oppressive pretrial incarceration, loss of income, public scorn, loss of professional affiliations, loss of personal and real property, loss of evidence (3 computer floppy discs, digital recording, diary), loss of witness (Adrienne Rentas) (although no allegation of death or unavailability is made), illegal search and seizure,  lack of inventory in search and seizure (alleged Rule 41(f) violation), taint of attorney/client privileged communication, taint of evidence (presence of Eastern Savings Bank at alleged illegal search), compelled testimony (alleged Fifth Amendment violation), Brady violations (Rule 16 violation), improper endorsement of forged document (Rule 18 U.S.C. § 505), alleged erroneous statements to Court during July 9, 2007 hearing, and alleged erroneous reasons for various continuances.

Despite Defendant Stradford's attempt to show prejudice through a scattershot approach of proffered reasons, he has failed to show, with specificity, that testimony or documents were lost because of the alleged pre-indictment delay in this case.  Because he has failed to show that any testimony or documents were lost due to the alleged pre-

indictment delay, it would be impossible for him to meet the next step of the test, to demonstrate that such lost evidence, whether through the dimming of memories or the disappearance of documents, is material to his innocence or unavailable from other sources. For these reasons, I find that Defendant Stradford's Fifth Amendment Due Process claim must be denied.

### B.     SEARCH AND SEIZURE GROUNDS FOR NEW TRIAL

Defendant Stradford also asserts that due to alleged violations under the Fourth, Fifth and Sixth Amendments relating to the search and seizure of various documents by the bankruptcy trustee, that Defendant is entitled to a new trial. During the course of trial, a Motion was made by the Defendant to suppress certain evidence that was seized from a residence, 2791 Lake Front Drive, which Defendant Stradford purchased with offense proceeds in North Carolina. Defendant Stradford also made a Motion asserting that his Sixth Amendment rights were violated because certain documents that were seized were allegedly protected by the attorney/client privilege. On August 30, 2007, in connection with Stradford's Motion to Suppress, the Court held an evidentiary hearing wherein the bankruptcy trustee gave sworn testimony via video teleconference; Stradford himself also gave sworn testimony. At the close of the hearing, the Court directed both parties to provide supplemental briefing on the issue. The Court subsequently ruled on both of Stradford's Motions in a hearing held on September 10, 2007. At that hearing the Government agreed to not introduce documents that were disputed as being protected under the attorney/client privilege and the Court found in favor of the Defendant regarding the illegality of the search and seizure of the residence. (See Tr. September 10, 2007 at p. 2).

The relevant facts surrounding the search and seizure are as follows. On January 11, 2006, various documents were seized by the trustee appointed in a bankruptcy proceeding that the Defendant had filed on behalf of a limited liability company the Defendant had formed to purchase the residence. The U.S. Attorney's Office obtained these records from the bankruptcy trustee pursuant to a grand jury subpoena. Subsequently, before trial, this Court granted the Defendant's Motion to Suppress, finding that the search and seizure conducted by the bankruptcy trustee was a violation of the Defendant's Fourth Amendment rights. Defendant now argues that mistakes made by the bankruptcy trustee during the illegal search and seizure are sufficient grounds for a new trial.

### i.    Lack of Inventory

The Defendant argues that he is entitled to a new trial because under Fed. R. Crim. Pro. 41(d) and (f), an officer conducting a search and seizure pursuant to a warrant "must prepare and verify an inventory of any property seized." Defendant Stradford asserts that he never received an inventory of the property seized from the 2791 Lake Front Drive residence. However, in this case, a traditional search warrant was never obtained. This is, in part, why the Court suppressed the evidence from the illegal search in the first place. The inventory requirement of Fed R. Crim. Pro. 41(f)(1)(B) applies in connection with returning a warrant. Here, the Court suppressed all the evidence from the illegal search. There couldn't be a more effective remedy. Defendant Stradford requests that the Court grant him an evidentiary hearing to create an inventory of what was seized to compare it to what was used at trial. However, it would be illogical to grant Defendant Stradford's request for an evidentiary hearing because

the Defendant, through his counsel, had access to the evidence seized from the bankruptcy trustee. These items were made available through the Government's initial discovery letter. (Def. Br. Ex. X1). Copies of these items were made available to the defense by letter dated July 14, 2006. (Gov't Br. Ex A). In addition, the Defendant's counsel reviewed all of the seized evidence at the FBI's office shortly before the trial. Thus, it is clear that Defendant had access to the seized evidence throughout this case and that holding an evidentiary hearing to identify such seized material would be futile.

### ii.   Grand Jury Subpoena of Bankruptcy Trustee

Defendant Stradford also argues that his Fifth Amendment rights were violated by the way that the Government obtained evidence that was in the possession of the bankruptcy trustee. Specifically, the Defendant argues that when the Government issued a subpoena to the bankruptcy trustee, it violated the Defendant's Fifth Amendment "act of production" privilege because the documents produced were not the bankruptcy trustee's documents, but were in fact Defendant's documents. The "act of production" privilege refers to an individual's right to assert his Fifth Amendment privilege against self incrimination when compelled to provide "information about the existence, custody, and authenticity of . . . documents" called for in a grand jury subpoena. U.S. v. Hubbell, 530 U.S. 27, 37 (2000); see U.S. v. Doe, 465 U.S. 605, 613 n. 11 (1984) (the court concluded that the act of production could constitute a protected testimonial communication under the Fifth Amendment because it might entail implicit statements of fact, in other words, by producing the documents in compliance with a subpoena, the witness would be admitting that the papers existed, were in his/her control, and were authentic). The privilege does not apply when the person asserting

-18-

the privilege does not have possession of the documents that were subpoenaed.  See Couch v. U.S., 409 U.S. 322, (1973) (the court held that a taxpayer could not assert his Fifth Amendment privilege to prevent the production of documents that were subpoenaed from his tax accountant).

Stradford relies on Boyd v. U.S., 116 U.S. 616 (1886), to support the claim that his "act of production" rights were violated, however his argument is misplaced.  In Boyd, the person asserting the Fifth Amendment privilege was in possession of the written statements in question.  The present case is distinguishable because here it was the bankruptcy trustee who had possession of the documents, not Defendant Stradford, who is the one asserting his Fifth Amendment privilege.  The difference lies in the fact that the Government did not subpoena the records from the Defendant himself, but from the bankruptcy trustee.  Thus, the Court finds that Defendant's Fifth Amendment rights regarding the "act of production" are not applicable to this case.

Similarly, Defendant Stradford's reliance on Fed R. Crim. Pro. 17(c) is unfounded.  Federal Rule of Criminal Procedure 17(c) states that "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive."  Defendant Stradford claims that the Government's subpoena of the bankruptcy trustee was unduly burdensome, however, at trial Stradford never made a motion arguing that the subpoena was unreasonable or oppressive.  Accordingly, the Court finds that these allegations are untimely, unfounded and an inappropriate basis for requesting a new trial.

### iii.    Use of Fruits of the Illegal Search

Defendant Stradford also claims that he is entitled to a new trial because the Government allegedly violated his Fourth Amendment rights by using evidence against him at trial that was allegedly the fruit of an illegal search.  "[A] defendant may . . . suppress any other evidence deemed to be 'fruit of the poisonous tree,' (i.e., evidence discovered as a direct result of the unlawful activity), by showing the requisite factual nexus between the illegality and the challenged evidence." U.S. v. Olivares-Rangel, 458 F.3d 1104, (10th Cir. 2006) (citing Wong Sun v. U.S., 371 U.S. 471, 485 (1963); U.S. v. Nava-Ramirez, 210 F.3d 1128, 1131 (10th Cir.2000)).  While it is true that Defendant Stradford was successful on his Motion to Suppress evidence in connection with an illegal search conducted by the bankruptcy trustee, he has failed to make any showing that a factual nexus exists between the evidence presented at trial and the illegal search. In its ruling, the Court did indicate that it would allow the Government to present evidence at trial if the evidence was obtained from an independent source other than the illegal search and seizure, however, Stradford does not direct the Court to any instances where the Government proffered evidence in this manner.  (See Tr. Sept. 10, 2007 at p. 24).  Accordingly, because Defendant Stradford has failed to meet this burden the Court cannot grant relief relating to his request.

### iv.    Attorney-Client Privilege

Finally, Defendant Stradford claims that the Government violated his Sixth Amendment right to counsel because it obtained certain hand-written documents that the Defendant prepared for his counsel during the illegal search and seizure conducted by the bankruptcy trustee.  These documents were marked for identification as Government Exhibits LFD-9 and LFD-16.  (Def.'s Br. Ex. D1).  However, the

-20-

Government did not even admit into evidence, use, or refer to these documents at trial. In the hearing that the Court conducted on September 10, 2007, it was clearly set forth on the record that "the government agreed not to seek to introduce those documents in the interest of an efficacious and expeditious resolution of the challenge." (See Tr. September 10, 2007 at p. 2). Accordingly, there is no basis to find that any of these documents had an impact upon the outcome of the trial.[6]

### C.    Ineffective Assistance of Counsel

Next, the Defendant claims that he is entitled to a new trial because his court appointed trial counsel, Ralph A. Jacobs, Esq.,  was ineffective in his representation at trial.   There are two components that must be met by a defendant before this Court can make a determination that a new trial is warranted due to ineffective assistance of counsel:

> [F]irst, defendant must show that counsel's performance was deficient, requiring [a] showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed defendant by the Sixth Amendment and, second, defendant must show that the deficient performance prejudiced the defense by showing that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable.

---

[6]Additionally, it is questionable whether these documents were privileged when created, because, in the course of creating the documents, the Government contends that Defendant Stradford consulted with, and communicated the information to a third-party co-conspirator, Christina Hachadoorian.  "[V]oluntary disclosure to a third party of purportedly privileged communications has long been considered inconsistent with an assertion of the privilege . . . .  Consequently, it is well-settled that when a client voluntarily discloses privileged communications to a third party, the privilege is waived."  Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1423-24 (3d Cir. 1991); see U.S. v. Rockwell Int'l, 897 F.2d 1255, 1265 (3d Cir. 1990); see also 8 Wright & Miller, § 2016 at 127 and n. 71.  The Court finds it unnecessary to make a determination on this issue because the allegedly privileged documents were not used during Defendant Stradford's trial.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  In reviewing general claims for ineffective assistance of counsel, the Supreme Court has made clear that courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that "strategic choices [by defense counsel] made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  Id. at 690.  Finally, the "defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  Id. at 688-689.

Defendant has failed to meet both prongs of the Strickland test in every example provided.  For the reasons set forth below, the Court finds that Defendant Stradford's representation exceeded the objective standards of reasonableness that determine whether counsel was indeed effective.

### i.      Exploration of Testimony from Potential Trial Witnesses

The Defendant's argument that his trial counsel's performance was deficient is unpersuasive and totally lacks merit.  Within his brief, Defendant speaks volumes about his counsel's failure to explore testimony by witnesses that were never put on the stand.  (See Def.'s Br. at pp. 21-23).  Specifically, Defendant references Adrienne Rentas and Melissa Reece.  Defendant argues that Mr. Rentas would have been a valuable witness in his defense because he allegedly opened fraudulent bank accounts without the approval of his supervisor and accompanied Christina Hachadoorian to Arrow Pontiac to pick up a new car she had purchased.  (Id. at 21).  Defendant also accuses his former trial counsel of failing to interview Melissa Reece, who allegedly denied any knowledge of Mr. Rentas, yet allegedly drove him to pick up the documents for Asset Funding.  The Court

fails to see the significance of the testimony of either Mr. Rentas or the relevance of interviewing Ms. Reece regarding any of the charges. These assertions do not rise to the level of errors so egregious that counsel can be described as deficient. In fact, it does not appear that these were even errors on the part of Mr. Jacobs. Furthermore, Defendant Stradford has failed to make a connection as to how this testimony may have helped his defense or provided exculpatory evidence. Indeed, the evidence in this case was overwhelming as to each Count and numerous witnesses testified meticulously as to each step of the transactions at issue. The potential testimony that Stradford refers to with Mr. Rentas and Ms. Reece would have been tangential at best. Thus, no prejudice to his defense has been shown.

### ii.      Challenging the Authenticity of Various Documents

Defendant also attacks the effectiveness of his trial counsel by questioning why the authenticity of various real estate closing documents that were allegedly presented at trial were not challenged. In this section of Defendant Stradford's brief, he fails to cite to the relevant parts of the record to even demonstrate that such documents were admitted into evidence. However, even assuming that Stradford's assertions are correct and supported by the record, again, the Court fails to see how the failure to challenge such documents might have prejudiced Defendant Stradford's case. Consequently, Defendant has failed to show that Mr. Jacobs was ineffective by not challenging such documents and that such failure has somehow prejudiced his defense.

### iii.      Exploration of Everette Scott's Criminal History

With respect to Everette Scott, Defendant Stradford alleges that Mr. Jacobs conducted an ineffective cross examination by "overlook[ing] the importance of business

-23-

cards indicating that he was a practicing attorney, and the criminal history of impersonating a lawyer, and deceptive business practices contrary to Mr. Scott's trial and grand jury testimony." (Def.'s Br. at p. 22).  However, Mr. Scott's alleged representations regarding his ability to practice law and previous conduct were a main thrust of Mr. Jacobs cross-examination.  (See Tr. Vol. 5, September 19, 2008 at pp. 4, 6, 7, 19, 25, 30,42).  In fact, Mr. Jacobs cross-examined Mr. Scott about these issues in great detail during trial, often over the objection of the Government.  (Id.).  Accordingly, the Court finds that Defendant Stradford's claim that Mr. Jacobs was ineffective in his cross-examination of Mr. Scott is unfounded.

### iv.    Request for Additional Continuances

Defendant Stradford's claim that Mr. Jacobs was ineffective for not requesting a continuance is also without merit.  The Court finds this claim to be the most specious, partly because Defendant Stradford has argued in a previous Motion, that his case should have been dismissed on Speedy Trial Act grounds based upon continuances requested by his former counsel, but now, conveniently argues that his trial counsel was ineffective for not requesting a continuance to get more familiarized with his case.  The following discussion dispatches all doubt as to the lack of candor in Defendant Stradford's argument.

To support his contention, Defendant relies on Pazden v. Maurer, 424 F.3d 303 (3d Cir. 2005).  In that case, the Third Circuit reversed a District Court's denial of federal habeas relief and remanded the case with instructions to grant the writ if the defendant is not retried in 180 days.  Id. at 319.  The salient facts of the case were that the District Court denied a continuance despite the defense counsel's statement on the

record that: (1)  she was not prepared for trial due to the prosecution's refusal to furnish timely discovery; (2) the prosecution's furnishing of discovery in a piecemeal fashion, and (3) the inability to interview all 560 witnesses on witness list before trial was to begin.  Id. at 316-18.  At that time the defendant opted to try the case pro se, because he felt that he knew the facts of the case better than his court appointed counsel.  Id. at 316-18.

Here, Defendant Stradford has offered no evidence that his defense counsel was unprepared.  Unlike the defense counsel in Pazden, Mr. Jacobs did not request a continuance, and despite Mr. Jacobs admonition that the case was complex, he never expressed a need for additional time to prepare.  Mr. Jacobs made a number of legal arguments regarding the evidence which were successful and effectively cross-examined the witnesses.  This case did involve a large volume of documents, but the trial itself only took 8 days.   Defendant has failed to meet his burden in overcoming the "rigorous standard" enunciated in Strickland and required to show ineffective assistance of counsel.  See Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (affirming the notion that the Strickland standard is rigorous and presents a heavy burden for defendants).  Accordingly, this Court finds that Mr Jacobs was not ineffective because he did not request a continuance before trial.[7]  Indeed, the Court is constrained to note that Mr.

---

[7]In his brief Stradford references two affidavits from Reverend Yvonne Stradford and Shawn Stradford (respectively, Defendant's mother and brother).  It does not appear that Stradford attached these affidavits to his papers, nonetheless, in his brief he quotes a statement from the purported affidavits, which avers that Mr. Jacobs said to the two affiants:  "if I had more time to go thru Mr. Ashley's discovery; if Ashley had even gone thru the discovery himself your son could have won this trial."  (Def.'s Br. at 26).  These purported statements, from Mr. Jacobs, are hearsay which lack the veracity that courts require to be considered competent evidence.  Furthermore, even if the Court

Jacobs is an able, experienced criminal defense attorney, who rose to the task of vigorously defending the Defendant in a case in which there was overwhelming evidence of Defendant's guilt.

### D.   **<u>Brady</u> Rule Violations**

Additionally, Stradford argues that the Government failed to disclose exculpatory evidence at the time of trial, in violation of its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83, 83 (1963), thus rendering his conviction constitutionally infirm.

> In <u>Brady v. Maryland</u>, the Supreme Court held that due process forbids a prosecutor from suppressing "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963).  To establish a due process violation under <u>Brady</u>, then, "a defendant must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment."  <u>U.S. v. Dixon</u>, 132 F.3d 192, 199 (5th Cir. 1997) (citations omitted); <u>see</u> <u>also</u> <u>U.S. v. Higgs</u>, 713 F.2d 39, 42 (3d Cir. 1983).

<u>U.S. v. Pelullo</u>, 399 F.3d 197, 209 (3d Cir. 2005).

Essentially, Stradford contends that the Government withheld information regarding Everette Scott's criminal record.  Stradford acknowledges that the Government turned over impeachment information regarding Everette Scott's criminal record, including a print-out of his known criminal history, under cover of letter, dated August 31, 2007.  (Def.'s Br. at p28; Def.'s Br., Ex. B3).  Nonetheless, Stradford contends

---

accepted these statements as true, they lack the specificity necessary to meet the second prong of the <u>Strickland</u> test:  "that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable."  If Mr. Jacobs was truly of the opinion that the defense could have won this trial if there were more time to go through discovery, it begs the question, how could Mr. Jacobs know that there was critical evidence contained in unreviewed discovery, if he did not have the time review it.

that Everrette Scott had an undisclosed felony arrest, in Florida, for impersonating a sports agent, which was ultimately dismissed. (Def.'s Br. Ex. Y2). Stradford references a letter from the Government, dated November 27, 2007, in which he claims that the Government denied his request for discovery regarding Everette Scott's criminal history. This contention is unsupported by the letter, because it clearly states: "[t]o the extent that any government witness was known to have a criminal record, that information and any other <u>Giglio</u> material was disclosed prior to trial. The Government is not aware of any 'record of suppression' of any of the materials you seek." (Def.'s Br Ex R, at p. 2).

The question of whether the Government knew about Scott's prior arrest and willingly suppressed the evidence goes toward the first prong of the <u>Brady</u> test, which requires that the defendant show that the "evidence was suppressed." <u>Pelullo</u>, 399 F.3d at 209. The Third Circuit has held that when the prosecution makes a diligent search of criminal records, and that search fails to reveal a prior criminal record, no <u>Brady</u> violation has occurred. <u>Hollman v. Wilson</u>, 158 F.3d 177, 190-81 (3d Cir. 1998). In this case, the Government relies on its November 27, 2007 letter, which states that all criminal information relating to Scott was disclosed, to support its argument that it did not know about Scott's prior arrest in Florida. (<u>See</u> Def.'s Br Ex R, at p. 2). The Government avers that it ran a criminal background check on Scott on August 27, 2007 and that Scott's Florida arrest did not appear. (<u>See</u> Def.'s Br Ex B3). The Government has not provided any affidavits to support its contention, however, the burden is on the Defendant to prove that such information was suppressed. Here, that burden has not been met, and thus, no <u>Brady</u> violation has occurred.

The second prong of the Brady test requires that the defendant show that "the suppressed evidence was favorable to the defense." U.S. v. Pelullo, 399 F.3d 197, 209 (3d Cir. 2005). Here, it is uncontroverted that the disclosure of a prior criminal arrest of an adverse witness would be beneficial to the defense. Therefore, the Court finds that this prong of the Brady test has been met.

The third prong of the Brady test requires that the defendant show that "the suppressed evidence was material either to guilt or to punishment." U.S. v. Pelullo, 399 F.3d 197, 209 (3d Cir. 2005). The Supreme Court has held that under the third prong of this test, there is no Brady violation "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Here, Stradford has failed to show that the disclosure of a ten-year old arrest, that did not result in a conviction, would have changed the outcome of his trial. Everette Scott's credibility was vigorously explored on cross examination. There is little hope that the potential cross examination of Scott on a ten-year old arrest, in Florida, for the unlicensed practice as a sports agent would have tipped the outcome of Stradford's case. Accordingly, the Court concludes that no Brady violation has occurred.[8][9]

---

[8]Stradford also asks that the Court allow him to submit supplemental briefing so that he could "complete [his] investigating of the evidence (Brady Materials) whenever it is supplied by the government." (Def.'s Br. at p. 30). However, since this Court finds that the Government has not violated its Brady obligations, Stradford's request to supplement additional briefing after further investigation is moot.

[9]The Court also recognizes that "the government is not obliged under Brady to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself." U.S. v. Pelullo, 399 F.3d 197, 209 (3d Cir. 2005) (quotations omitted). Here, the attachment provided by Stradford, indicating that Scott

**E.      SIXTH AMENDMENT VIOLATION TO COUNSEL RELATING TO JAIL HOUSE INFORMANT**

Stradford devotes part of his brief to the argument that he is entitled to a new trial because of an alleged Sixth Amendment violation of his right to counsel.  It is well established that:

> [t]he deliberate use of jailhouse informants to elicit incriminating information may violate a defendant's right to counsel.  United States v. Henry, 447 U.S. 264, 274 (1980); see also Massiah v. United States, 377 U.S. 201, 206 (1964).  In Massiah v. United States, the Supreme Court held the government violates a prisoner's Sixth Amendment right to counsel when it uses, as evidence, statements made by the defendant "which [it] had deliberately elicited from him after he had been indicted and in the absence of his counsel."  Id. at 206.

U.S. v. Brink, 39 F.3d 419, 421 (3d Cir. 1994).  Stradford alleges that, Thomas Williams, a fellow jail mate at the Monmouth County Correctional Institution ("MCCI"), was used by the Government to elicit incriminating statements from him.  The Government avers that it did not direct Williams to contact Stradford and that Williams did not make contact with the Government until after the alleged conversations with Stradford took place.  This critical fact is controverted, however, the Court need not inquire into it further because whatever statements that Stradford said to Williams were not used at trial against him.

Even if the Court were to hold an evidentiary hearing and determine that a constitutional error occurred, the remedy of holding a new trial would only be applicable

---

was arrested in Florida, appears to be a print-out with a date of March 1, 2006.  (Def.'s Br. Ex. Y2).  Thus, it appears to the Court that such information was known to Stradford prior to trial, and could have been used accordingly, to impeach Scott on the witness stand.  Consequently, this provides an alternative ground for the Court's finding that no Brady violation has occurred.

if such statements made by a defendant were used against him at trial.  See U.S. v. Brink, 39 F.3d 419, 424 n. 9 (the court stated that most constitutional errors are amenable to a harmless error analysis and that in the context of the Sixth Amendment, a coerced confession does not warrant a new trial if the admittance of the  defendant's confession was found to be harmless beyond a reasonable doubt).  Here, Stradford's statements to Williams, whatever they may have been, were never used against him at trial, nor did Williams even testify at trial.  Therefore, it follows that Stradford could not be afforded a new trial based upon this claim.

## IV.    CONCLUSION

For the reasons stated herein, Defendant Stradford's Motion for a New Trial is denied.

Dated: May 29th, 2008

s/ Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge